MR. JUSTICE GROVES
delivered the opinion of the Court.
This is the third time this case has been before us in an interlocutory manner. Wheeler v. District Court, 178 Colo. 320, 497 P.2d 695 (1972); and Wheeler v. District Court, 180 Colo. 275, 504 P.2d 1094 (1973). The second case has no materiality here and will not be mentioned further.
The petitioner, Wheeler, was indicted by the Adams County grand jury in September of 1971 and charged with four counts of prostitution related offenses in violation of C.R.S. 1963, 40-9-11. Two of the counts charged the petitioner with operating and managing a building and with soliciting two females for purposes of prostitution. Two counts charged the petitioner with conspiracy to commit the same offenses.
Petitioner filed a motion to dismiss the indictments on the ground that he had been granted transactional immunity in connection with his testimony before a grand jury in Denver. This motion was denied and he came here for the first time. We ruled that he had made a prima facie showing in support of his motion to dismiss, casting upon the district attorney the burden of going forward. We remanded the matter for further proceedings, retaining jurisdiction to review the rulings of the respondent district court at any stage of the proceedings.
In July of 1971 the district attorney in Denver desired that the petitioner testify before the grand jury then meeting in *195 Denver. The petitioner was in Las Vegas, Nevada. Two investigators of the district attorney’s office went to Las Vegas and conferred with the petitioner. The investigators requested that petitioner return to Denver to testify and assured him that if he did so, he would be granted immunity against prosecution of any offenses about which he testified. The petitioner agreed to so testify and returned to Denver at the expense of the district attorney’s office. Upon petitioner’s return to Denver two deputy district attorneys reiterated the same assurances to the petitioner.
The petitioner appeared before the grand jury and refused to testify on the grounds he might incriminate himself. On August 3, 1971, he was then taken to Judge James C. Flanigan, a Denver District Judge, before whom the grand jury and the district attorney petitioned for immunity. The judge ordered him to testify and granted immunity “whereby such witness may not be prosecuted or subjected to any penalty or forfeiture on account of his compulsory testimony except prosecution for perjury or contempt committed while giving testimony or producing evidence.” Petitioner then testified before the grand jury. Neither the respondent court nor this court have been informed of the content of his testimony.
There was filed in the Adams County proceedings an affidavit by Judge Flanigan in which he made the following statements:
“That pursuant to petition by the Denver District Attorney, I granted transactional immunity to Darreld (Andy) Wheeler on August 3, 1971 and that such immunity was granted pursuant to and in accordance with 1963 C.R.S., 154-1-18, as amended.
“That such immunity, as explained to the said Darreld (Andy) Wheeler and as granted to him by this Court’s Order, extended to immunity from prosecution by Federal, State or Local officials for crimes encompassed within the transactions to which he testified before the 1971 Statutory Grand Jury in and for the City and County of Denver, State of Colorado.”
*196 Petitioner filed a motion to dismiss the indictments on account of his having been granted transactional immunity. After a hearing in February of 1973 the respondent court denied the motion, and it is this denial that is now at issue before this Court.
We quote quite at length from the court’s findings:
“So then, turning their back to the investigation of this organized crime in Adams County which was then being conducted before the Adams County Grand Jury, they [the district attorney’s investigators] proceeded to go to Las Vegas, Nevada, outside the jurisdiction of the State of Colorado, and inveigle, induce or persuade the return of Mr. Wheeler to testify in this alleged bribery and conspiracy .... “So these two officers, who had been more or less employed by Adams County and the Adams County District Attorney to ferret out and to investigate this alleged prostitution in Adams County, went out to see this defendant whom they knew had been charged and that his conduct was being investigated, and they made a deal with him because they had no way of bringing him back. He didn’t have to appear before the Denver Grand Jury because a subpoena couldn’t be served upon him. The only way he could be brought back would be by way of a prosecution, indictment or an information charging him with a criminal offense under which he could be prosecuted. And as the witness Mulnix, a Denver police officer, has stated, ‘We wanted Mr. Wheeler to come back and we promised him immunity for anything that he might be asked about or anything that might be said by him before the Grand Jury.’ Whether it was he who stated that the defendant Wheeler, particularly, wanted the prosecution to be dismissed in Adams County against him or whether it was some other witness, it was brought out to the Court that one of the conditions upon which the defendant Wheeler was to be brought back to Denver to testify was that the prosecution in Adams County or the investigation was to cease and he was to be free from that. He wasn’t interested in prosecuting Marks or anybody else: he was interested in getting the prosecution against him dismissed.
* * * *
*197 “So Mr. Wheeler carne back and they said, ‘Here’s how we’re going to do it. We will take you before the Grand Jury. We will pay all your expenses back. We will put you up in a hotel. We will pay all your fare and everything, and you will go before the Grand Jury and they will ask you some questions and then you will say immediately, “Well, I won’t answer because it may tend to incriminate me.” Then the District Attorney will go in before the Grand Jury and ask that you be granted immunity. Then we will go before the judge and we will ask to have immunity and then anything that is brought out in these Grand Jury proceedings cannot be used against you. They can’t base a prosecution upon it, and particularly the prosecution in Adams County and the investigation of the Grand Jury which is going to return an indictment. We’ll get rid of that for you.’ With that thinking, he came back and that is what they proceeded to do.
‡ ‡ ‡ ‡
“The only thing that the Court now has to determine is what type of immunity was granted by Judge Flanigan in the proceedings in Denver relative to the Grand Jury proceedings in Denver allegedly investigating the bribery and conspiracy to bribe the Honorable Floyd Marks of Adams County, the District Attorney of the 17th Judicial District. The Court finds that the immunity which was granted was both transactional and use, transactional in that the District Attorney in Denver and all other District Attorneys in the State of Colorado and all federal officials and, as the cases state, all over the United States agree that no prosecution could be brought against the defendant Darreld Wheeler under a transactional immunity because of information gained or learned during the Grand Jury proceedings. Judge Flanigan granted his immunity because he was to testify about matters which would tend to incriminate him. And also it was a use immunity because none of the matters about which he testified in that case pending before the Grand Jury could be used in any other case for prosecution or for any other purpose because he was granted this immunity and that could not be used against him.
*198 “So what do we have in this case? We have a prosecution against a man based not upon anything learned or acquired during the course of the Grand Jury investigation or the proceedings in Adams County. He was under investigation and subsequently an indictment was returned by the Statutory Grand Jury of Adams County, not knowing at all, in fact, whether he testified and they knew nothing about what he did testify because the proceedings in the Denver Grand Jury are secret and have never been divulged, to the Court’s knowledge, to anybody ....
“The Court feels that, on its face, the grant of immunity by The Honorable Judge Flanigan did not prohibit or in any way provide that the prosecution in Adams County would be changed or dismissed or in any way dealt with in any manner and that it was not so intended. It was intended that anything that Mr. Wheeler would state or testify to in the Grand Jury in Denver could not be used against him in Denver nor in Adams County as Counsel stated in his argument.
“. . . [ I] t seems as though the District Attorney in Denver and these members of the Organized Crime Unit are working for this defendant and they are trying to get him out of the prosecution when they should be doing just the opposite. They should be out here trying to prosecute him. And the defendant was in on the whole deal....
“Under those circumstances, the Court feels that he was not misled in any way. In fact, if anything, he misled the officers by getting them to promise everything under the sun, particularly that the prosecution against him in Adams County would be dismissed in return for his coming back. “Now whether or not before the Grand Jury he was asked questions or whether he volunteered answers, or whatever took place in the Denver Grand Jury, is not, so far as the Court finds, material in this hearing at all, because he was not led to testify in the Denver Court by persuasion or chicanery of any kind. He was aware and he was a party to the whole thing, and now he says he wished to be relieved from prosecution.
*199 “The Court feels that under those circumstances, he is not an innocent victim, you might say, of the action by the so-called investigators for the Organized Crime Unit, and this Court will have no part in turning this man loose from standing trial on this indictment because of the proceedings in Denver. Therefore, the motion to grant immunity and dismiss the proceedings is denied.”
I.
Judge Sirica in Application of U.S. Senate Select Committee on Presidential Campaign Activity, 361 F. Supp. 1270 (D.C. 1973), defined transactional and use immunity as follows:
“Transaction immunity may be simply described as that which precludes prosecution for any transaction or affair about which a witness testifies. Use immunity, by contrast, is a grant with limitations. Rather than barring a subsequent related prosecution, it acts only to suppress, in any such prosecution, the witness’ testimony and evidence derived directly or indirectly from that testimony. Evidence obtained wholly independently of immunized testimony may serve as a basis for prosecuting the witness for activities and transactions including those covered in his own statements.”
The respondent court found the immunity grant by Judge Flanigan to be both transactional and use. However, an analysis of its definition of transactional immunity discloses that it was really defining only use immunity.
We have been asked to decide whether the immunity granted by Judge Flanigan can be characterized as use or transactional. Any immunity granted under 1969 Perm. Supp., C.R.S. 1963, 154-1-18 is necessarily transactional. The statute, after providing that a court may order a witness to testify, continues as follows:
“But no such witness may be prosecuted or subjected to any penalty or forfeiture for, or on account of, any transaction, matter, or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, nor may testimony so compelled be used as evidence in any criminal proceeding against him in *200 any court, except a prosecution for peijury or contempt committed while giving testimony or producing evidence under compulsion as provided in this section.”
This is almost a verbatim copy of the former federal immunity statute, 18U.S.C. § 2514.
As pointed out by Mr. Justice Powell in Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), § 2514 provided for transactional immunity. However, the Congress repealed that statute in 1970 and enacted a use immunity law. 18 U.S.C. § 6002. In Kastigar it was held that transactional immunity affords broader protection than the Fifth Amendment privilege, and is therefore not constitutionally required. Respondent then argues that since there is no constitutional requirement of granting full transactional immunity in order to compel testimony, Colorado’s statute could be interpreted as granting use immunity only. The problem with this argument is that our General Assembly has not so amended our statute and it still provides that such a witness, after having claimed his privilege, may not be prosecuted for any transaction about which he has been compelled to testify.
II.
The district attorney argues that the petitioner appeared before the grand jury for the specific purpose of attempting to obtain immunity and, therefore, waived immunity. He cites State v. Panagoulis, 3 Md. App. 330, 239 A.2d 145 (1968). There the court referred to subterfuge or collusion as a basis for waiving immunity and stated that there may be other means as well by which a witness may waive his immunity. State v. Comes, 237 Md. 271, 206 A.2d 124, was cited in Panagoulis. However, neither Panagoulis nor Comes held that the witness had waived immunity.
The district attorney also cites 8 Wigmore On Evidence § 2282 (McNaughton rev. 1961) for the proposition that testimony under only the appearance of compulsion cannot earn immunity.
Assuming arguendo that the district attorney is correct as to the waiver of immunity concept, the facts *201 presented here would not support a conclusion that the petitioner waived his immunity. He did not seek to come to this grand jury and testify. Rather, the district attorney sought him and asked him to testify. The respondent court referred to a “deal,” and appears to give it an invidious connotation. The only evidence of a “deal” is that the petitioner was assured that, if he would come and testify, transactional immunity would be granted to him. Also, it is doubtful that the court reached its conclusion on the basis of waiver of immunity. It may be that the district attorney will be able by further evidence to establish a waiver, but he has not done so as yet.
III.
Having concluded that the petitioner has been granted transactional immunity, the point has been reached when the court must ascertain whether petitioner’s testimony before the grand jury in Denver related to the Adams County charges. Authority is hereby granted the respondent court to request of the district court in Denver — and receive — a transcript of the petitioner’s testimony before the grand jury. This transcript shall be obtained, held and used under such protective orders as the respondent court may enter.
Our rule to show cause is now made absolute.
MR. CHIEF JUSTICE PRINGLE concurs in the result.
MR. JUSTICE ERICKSON did not participate.