## No. 27576

## The People of the State of Colorado v. Arnaldo Lucero

(584 P.2d 1208)

Decided September 18, 1978.

Robert L. Russel, District Attorney, David H. Zook, Deputy, John R. Rodman, Special Deputy, for plaintiff-appellee.

Vincent Franco, for defendant-appellant.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

Appellant Lucero appeals a judgment ordering his summary incarceration for contempt of court. Despite receiving a grant of transactional immunity, Lucero refused on Fifth Amendment grounds to obey the district court's orders to testify before a grand jury. The court thereupon ordered him incarcerated for contempt of court. We affirm the district court's judgment.

In 1977, a statutory grand jury was convened in El Paso County for the January term to investigate the unlawful traffic in narcotics. The grand jury summoned Lucero as a witness on January 18, 1977. He gave his name and address, but refused to answer all further questions on the ground his answers might incriminate him.

Lucero and his attorney were then brought before District Judge Calvert in chambers. The grand jury submitted to the court an application to grant the witness immunity and to compel him to testify, and the court signed the application. Judge Calvert explained to Lucero the terms of the grant of immunity and indicated that any subsequent refusal to testify would cause him to be in contempt of court and would subject him to incarceration until he chose to answer the questions. Lucero stated that he understood, and before returning to the grand jury, apparently consulted with his attorney.

On his return to the grand jury, Lucero refused to give his name or to answer any other question. Lucero and his counsel were again summoned

to the judge's chambers, where the court reporter read to the judge these questions and answers. After offering to provide Lucero with protection if his unwillingness to testify arose from fear for his safety, the court ordered him jailed for contempt of the court until he agreed to testify or until the grand jury was dismissed. The judge rejected the sole objection of Lucero's attorney that the contempt had not occurred "in the presence of the court" and, therefore, that contempt could not be found without issuing a citation and affording a hearing.

One week later, on January 25, 1977, Lucero was brought before the same grand jury. District Judge Baker was also present in the courtroom. The district attorney questioned Lucero under the grant of immunity. Upon his refusal to answer any questions, Judge Baker advised him of the meaning of the grant of immunity and of his duty to testify. Thereupon, the court asked Lucero:

"[I]s it your continuing position to refuse to answer these questions after you have been made fully aware that you are compelled to testify, being given a complete grant of immunity from criminal prosecution, thereby removing any basis for your claim of privilege? Is that your position, Mr. Lucero?"

Lucero replied:

"I refuse to answer that question on the grounds that it may incriminate me and I would like to have my lawyer present."

Judge Baker then excused the grand jury and summoned Lucero's attorney. The record of the proceedings which had just occurred before the grand jury was read for Lucero's attorney. His attorney argued against the validity of the grant of immunity and suggested that this grant of immunity would not protect Lucero from criminal prosecution in other states. Judge Baker rejected this argument and proceeded to find Lucero in "direct contempt of court." He then order Lucero incarcerated until he agreed to testify or until the grand jury term expired.

On February 1 and on February 8, 1977, Lucero was brought before the grand jury and presiding District Judges Hinton and Baker. On each occasion he refused to answer even the most innocuous questions. Each time, before the judge extended the order of confinement, Lucero requested that his attorney be present. These requests were refused.

On February 28, 1977, Judge Baker set bail at $7500 pending appeal. Lucero posted the appeal bond and was released.

On this appeal, Lucero challenges the procedures followed by the court prior to his incarceration for contempt. Lucero contends that the court erred in imposing punishment for contempt without affording Lucero advance written notice, right to counsel, and an opportunity to present evidence. We hold that the summary contempt proceeding under the facts here was appropriate. We also hold that before a judge orders incarceration, the recalcitrant witness is entitled, on his request, to have an attorney present with him.

 Section 13-90-118, C.R.S. 1973 provides a means of obtaining testimony from a witness called before a court or grand jury. Where the witness' testimony is "necessary to the public interest," the court may grant the witness immunity and order him to testify. The terms of the grant immunize the witness from prosecution or subjection "to *any penalty or forfeiture* on account of his compulsory testimony except prosecution for perjury or contempt. . . ." (Emphasis added.) This statute explicitly mandates that the testimony so compelled may not ". . . be used as evidence in any criminal proceeding against him in any court, . . ." In return for this grant of immunity, "the witness shall not be excused from testifying . . . on the grounds that the testimony . . . required of him may tend to incriminate him or subject him to a penalty or forefeiture." The immunity granted under this statute is clearly and necessarily transactional. *Wheeler v. District Court,* 184 Colo. 193, 519 P.2d 327 (1974).

 The court's authority to punish for contempt of court a witness who disobeys an order to testify issued under section 13-90-118, C.R.S. 1973, cannot be seriously questioned. The civil contempt provisions of the Colorado Rules of Civil Procedure, particularly Rule 107(a), expressly provide that "disobedience . . . of any person to . . . any lawful . . . order of said court . . . shall constitute contempt."

Opinions of the Colorado and United States Supreme Courts confirm this power. The recent United States Supreme Court opinion in *United States v. Wilson,* 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975) involved the disregard of an order to testify in a court proceeding, but the court's language is equally applicable to a refusal to answer questions before a grand jury investigation:

"The face-to-face refusal to comply with the court's order itself constituted an affront to the court . . . .[C]ontempt must be available to vindicate the authority of the court as well as to provide the recalcitrant witness with some incentive to testify."

*Accord, Smaldone v. People,* 158 Colo. 7, 405 P.2d 208 (1965).

But the determination that a refusal to testify is properly punishable as contempt does not end the inquiry. The controversy in the present case revolves around the court procedure followed in imposing the contempt and incarceration. Judge Calvert and subsequently Judges Hinton and Baker invoked the procedure of C.R.C.P. 107(b), which permits a judge to punish civil contempt in summary fashion. This rule provides:

"When a contempt is committed *in the presence of the court* it may be punished summarily. In such case an order shall be made reciting the facts constituting the contempt, adjudging the contempter guilty of contempt, and prescribing the punishment therefor . . . ." (Emphasis added.)

Lucero contends, however, that his contemptuous conduct occurred during the grand jury proceeding and that any disruptive effect caused by the refusal to testify was limited solely to that proceeding. Therefore, according to Lucero's argument, the contempt was not committed "in the presence of the court" and C.R.C.P. 107(b) was improperly applied.

It is Lucero's position that the correct procedure was for the court to issue advance written notice and afford a hearing pursuant to the provisions of C.R.C.P. 107(c), which states:

"When it appears to the court by motion supported by affidavit that contempt has been committed *out of the presence of the court,* it may ex parte order a citation to issue to the person so charged to appear and show cause at a time designated why he should not be punished therefor. The citation and a copy of the motion and affidavit shall be served upon such person a reasonable time before the time designated . . . ." (Emphasis added.)

Unfortunately, Rule 107 contains no amplification as to the meaning of the phrase "in the presence of the court." We look to the case law and legislative purpose for guidance.

The only relevant Colorado decision to interpret this provision is *Smaldone v. People,* 158 Colo. 7, 405 P.2d 208 (1965). After Smaldone refused on Fifth Amendment grounds to answer any questions propounded to him before a grand jury, he was brought before the court. The questions were repeated and Smaldone reiterated his blanket refusal to testify. Thereupon, the trial court judged him guilty of criminal contempt and sentenced him to jail.

In *Smaldone,* this court affirmed the trial court's judgment and approved of the summary contempt proceeding, finding that the contempt had occurred "in the presence of the court":

"[I]t is the act of defiance in refusing to answer any and all questions which might be asked of him, *which act was committed by the witness in the presence of the court,* that forms the basis for the judgment of contempt." 158 Colo. at 11. (Emphasis added.)

*See also Enrichi v. United States,* 212 F.2d 702 (10th Cir. 1954).

Six months after *Smaldone* was announced, the United States Supreme Court adopted a contrary interpretation of the phrase "in the presence of the court" in *Harris v. United States,* 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965). *Harris* arose in the context of Federal Criminal Rule 42(a) which, like C.R.C.P. 107(b), provides for summary punishment where the contempt is committed "in the presence of the court." In effect, *Harris* overruled the interpretation of the Federal rule as set forth in *Enrichi v. United States, supra.*

We find *Harris* is not persuasive in our interpretation of our rule. The court's need in the instant case to vindicate its authority as to acts committed in its presence applies even where the grand jury is the main

proceeding. It is an order of the court and not of the grand jury which the witness has disregarded. *See* p. 9, n. 2, *infra*. The federal court's interpretation of a federal rule is not dispositive of the construction we give to a similar Colorado rule. Moreover, it is not clear that the rationale of *Harris* would be followed by the United States Supreme Court today.[1]

■ An examination of the underlying purpose for our contempt of court procedures is of value in distinguishing between the two types of contempt proceedings. The underlying rationale for the distinction is that in those cases where the judge did not personally observe the contemptuous conduct, a hearing is necessary to find the facts. The hearing enables the judge to ascertain the facts of the occurrence and permits the defendant to explain his behavior and offer evidence to mitigate the penalty.[2] Thus, where the contempt consists of an attorney writing a defamatory letter, *Cooke v. United States,* 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed 767 (1925); an attorney uttering a contemptuous remark out of the judge's hearing, *Losavio v. District Court,* 182 Colo. 180, 512 P.2d 266 (1973); an attorney wilfully failing to appear for trial, *Smith v. District Court,* 150 Colo. 136, 371 P.2d 271 (1962), *Harthun v. District Court,* 178 Colo. 118, 495 P.2d 539 (1972); or a person disobeying a court order for the payment of alimony or child support, *Conway v. Conway,* 134 Colo. 79, 299 P.2d 509 (1956), *In Re Murley,* 124 Colo. 581, 239 P.2d 706 (1951), an evidentiary hearing is required under due process. Where, however, the judge is aware of the contemptuous conduct from personal observation, where no lawful justification exists for the contemptuous behavior, and where the penalty is not of the type that can be mitigated by any evidence offered, we fail to see what purpose would be served by a full-fledged evidentiary hearing. In such circumstances, summary procedure, as followed in this case, is appropriate.

■ We find, therefore, that the summary procedure authorized by C.R.C.P. 107(b) and utilized in the present case complied fully with the requirements of constitutional due process. Due process is a flexible

---

[1] *Harris* was decided by a 5-4 margin in 1965. In a concurring opinion to *United Stated v. Wilson,* 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975), Justices Blackmun and Rehnquist indicate their disagreement with the *Harris* rule.

[2] A second reason given by the United States Supreme Court in *United States v. Wilson, supra,* and *Harris v. United States, supra,* is that summary punishment is justified as a means for the judge to vindicate his authority and to prevent delay where "time is of the essence" — two elements which are present only when the contempt occurs "in the presence of the court." Under the first leg of this rationale, summary procedure would seem appropriate in the case of a grand jury witness who disregards an order to testify. The disobedience is of a court, and not a grand jury, order and is committed directly before a judge, and not out of his hearing, such as a contemptuous remark made out of court. As for the second element — preventing unduly burdensome delay — admittedly the time constraints faced in a grand jury investigation are usually not as severe as those faced in a court proceeding. However, the Supreme Court's reasoning begs the real question. Notwithstanding the absence of a compelling need for swift punishment, if a hearing would serve no useful purpose, it seems insensible to require one.

concept, and procedures must be tailored to the exigencies of each factual setting. *See Cafeteria Workers v. McElroy,* 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961).

■ Given our discussion of the underlying purposes served by a hearing in contempt situations, for these reasons we are convinced that the procedure followed by Judge Baker on January 25, 1977 was constitutionally sufficient.

Appellant Lucero's blanket refusal to testify is uncontradicted and unjustified[3] and was observed first hand at the January 25, 1977 proceeding by District Judge Baker, *who was present with the grand jury* in the courtroom. Mitigating evidence of good faith is irrelevant to the sanction imposed — incarceration until Lucero cooperates — because it is designed, not to punish Lucero, but to elicit his testimony. At the January 25, 1977 proceeding, Judge Baker thoroughly advised Lucero of the protection afforded by a grant of immunity and of his obligation to testify and gave him a final opportunity to rethink his position.

■ Accordingly, we hold that a witness who, despite receiving immunity, persists before a trial court judge in refusing on Fifth Amendment grounds[4] to supply grand jury testimony, commits contempt "in the presence of the court" and may be punished summarily pursuant to C.R.C.P 107(b).

■ A more troublesome constitutional problem is raised, however, by the court's refusal to permit legal assistance at certain times during the several proceedings. At the third and fourth contempt hearings presided over by Judges Hinton and Baker, respectively, Lucero's requests for the presence of counsel were denied. While prior to the enactment of section 16-5-204(4)(d), C.R.S. 1973 (1977 Supp.), in 1977, a grand jury witness had no right to insist upon counsel's presence in the grand jury room,

---

[3] Appearing before Judge Baker on January 25, 1977, Lucero's counsel claimed in justification for Lucero's refusal to testify that Colorado granted immunity would not protect Lucero from criminal prosecutions in other states. Judicial precedent and logic compel the conclusion, however, that the protection afforded by the grant of immunity be considered total. The proposition that a Colorado grant of immunity bars any federal or local prosecution for the same offense is clearly established. *See Wheeler v. District Court,* 184 Colo. 193, 197, 519 P.2d 327 (1974); *In Re Parker,* 411 F.2d 1067 (10th Cir. 1969), *vacated as moot, Parker v. U.S.,* 397 U.S. 96, 90 S.Ct. 819, 25 L.Ed.2d 81 (1969); *Murphy v. Waterfront Commission,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964) (state grant of immunity bars federal government from making any use of the compelled testimony.) To accept appellant's argument with respect to sister state prosecutions would permit a witness to thwart Colorado's immunity scheme by simply alleging the possibility of prosecution in another state. Indeed, in the present case, none of the questions asked of Lucero on January 25 pertained to out-of-state activities.

[4] Where the witness objects to testifying on grounds other than the Fifth Amendment, such as a claim that the questions are based on information acquired from an illegal wiretap, due process may require a Rule 107(c) hearing to determine the justifiability of this defense. *See Westerberg v. District Court,* 181 Colo. 10, 506 P.2d 746 (1973), *cert. denied,* 414 U.S. 1162, 94 S.Ct. 925, 39 L.Ed.2d 115 (1974).

*People ex rel Losavio v. J.L.,* 195 Colo. 494, 580 P.2d 23, 25 (1978), a different procedure is called for with respect to a contempt proceeding resulting in incarceration. The United States Supreme Court has expressly guaranteed to a defendant the Sixth Amendment right to retained or appointed counsel, whenever imprisonment is imposed. *See Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972).[5]

██ Labeling the contempt civil and conditioning the incarceration on a continued refusal to testify does not alter the burden of imprisonment. Three recent federal decisions involve a factual setting nearly identical to the present case. In each case, the trail court ordered a witness imprisoned after a finding of guilty of civil contempt for refusing to testify before a grand jury despite being granted immunity. The Second, Fourth, and Ninth Circuits of the United States Court of Appeals upheld unanimously the witness' right to counsel at these civil contempt proceedings. *In Re Di Bella,* 518 F.2d 955 (2d Cir. 1975), *In Re Kilgo,* 484 F.2d 1215 (4th Cir. 1973), *United States v. Sun Kung Kang,* 468 F.2d 1368 (9th Cir. 1972).

██ We agree that the right to counsel must be extended to all contempt proceedings, whether labeled civil or criminal, which result in the imprisonment of the witness. We find, however, that the refusal of District Judges Hinton and Baker on February 1, 1977 and February 9, 1977 to permit Lucero's counsel to appear at the contempt proceedings was harmless error. These proceedings did nothing more than continue an order made at the contempt proceeding before Judge Baker on January 25, 1977, *at which Lucero's attorney was present.* Judge Baker's order of January 25, 1977 directed that Lucero be incarcerated until he agreed to testify or until the grand jury was dismissed. The fact that Judge Baker's order provided Lucero with an opportunity to purge himself of contempt by testifying before the grand jury on February 1, 1977 and that subsequent contempt orders of an ancillary nature were issued out of the presence of counsel does not affect the validity of the January 25th order of incarceration.

██ Lastly, Lucero challenges the trial court's decision to exclude portions of his designation of record. Even if erroneous, we believe that the error is harmless.

Lucero designated five items to be included in the record, which the district court eliminated. The record indicates no reason for the court's action. One item requested was the "Instructions to the Grand Jury," an order defining the scope of inquiry for the grand jury. The four remaining items sought information about the appointment and swearing in of

---

[5] "We hold, therefore, that absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony unless he was represented by counsel at his trial." *Argersinger,* 407 U.S. at 37.

special prosecutors and special investigators and the names of persons who were present when Lucero was questioned before the grand jury.

If Lucero, or his attorney, had stated that he refused to answer the grand jury's questions because the grand jury was exceeding the scope of its powers of inquiry or because unauthorized persons were present, the items designated would have been relevant. However, the only ground asserted by Lucero or his counsel for refusing to testify was the Fifth Amendment privilege against self-incrimination — specifically, the fear of prosecution outside the state of Colorado. Lucero was repeatedly asked to answer the questions and at any time could have made these other objections, and his attorney could have raised them when he appeared before Judge Calvert or Judge Baker at the first and second contempt hearings.

We therefore affirm the district court's judgment.