## No. 27747

### The People of the State of Colorado v. Dean Berton Casselman

(583 P.2d 933)

Decided September 25, 1978.

Doyle T. Johns, District Attorney, William E. Shevlin, Deputy, for plaintiff-appellant.

Rodden and Marshall, Robert R. Marshall, for defendant-appellee.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

The People appeal the trial court's dismissal of four felony informations which charged defendant Casselman with the theft of wheat. We agree with the trial court. The district attorney failed to prove that he did not use privileged testimony given by the defendant pursuant to a grant of immunity at a bankruptcy hearing. We affirm.

On September 17, 1975, defendant Casselman filed bankruptcy in the United States District Court of Colorado. On October 24, 1975, he testified at a creditors' meeting pursuant to the immunity provision of Section 7(a)(10) of the Bankruptcy Act, 11 U.S.C. §25, which provides:
"[N]o testimony or any evidence which is directly or indirectly derived from such testimony . . . shall be offered in evidence against him in any criminal proceeding. . . ."

The district attorney, the assistant district attorney, the district attorney's investigator, and various creditors, including three complaining witnesses, attended the bankruptcy hearing.

In April and May of 1976, the district attorney filed four felony informations charging the defendant with theft of wheat from several complainants. After the four informations were consolidated for trial, the defendant filed motions to dismiss on the grounds that his immunized testimony was the basis of the charges filed against him, and that all the evidence obtained by the district attorney's office was gathered either directly or indirectly from the immunized testimony. Evidentiary hearings were held on October 20, 1976, and December 16, 1976. The charges were dismissed after the trial judge found that:
"participation by the District Attorney and his staff (at the bankruptcy hearing) constitutes a prima facie use of the defendant's immunized testimony [and] . . . [t]hat the People of the State of Colorado have not sustained their heavy burden of affirmatively establishing to the court that the prosecution evidence is wholly independent and not tainted in any way by the immunized testimony of the defendant."

In *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed. 2d 212 (1972), the court addressed the contention that use and derivative use immunity would not adequately protect a witness from possible incriminating uses of immunized testimony in a subsequent criminal prosecution. It was held that the prohibition contained in 18 U.S.C. §6002 against the use of any "information directly or indirectly derived from such testimony" barred the use of the testimony "in any respect," which also included its use to obtain investigatory leads and otherwise gain information

regarding potential prosecution witnesses. With regard to the prosecution's burden of proof, the United States Supreme Court held in *Kastigar* that: "A person accorded . . . immunity under 18 U.S.C.§6002, and subsequently prosecuted, is not dependent . . . upon the integrity and good faith of the prosecuting authorities. . . . One raising a claim under this statute need only show that he testified under a grant of immunity in order to shift to the *government the heavy burden of proving that all of the evidence it proposes to use was derived from legitimate independent sources.''* (Emphasis added.)

Bearing in mind that 18 U.S.C. §6002, at issue in *Kastigar,* is virtually identical to the immunity provision of the Federal Bankruptcy Act, 11 U.S.C. §25,[1] it is not surprising that the federal case law has extended the *Kastigar* rule to prosecutions allegedly using testimony given in bankruptcy proceedings. *See United States v. McDonnel,* 550 F.2d 1010 (5th Cir. 1977); *Block v. Consino,* 535 F.2d 1165 (9th Cir. 1976); *United States v. Seiffert,* 463 F.2d 1089 (8th Cir. 1972).

In *United States v. Dornau,* 359 F.Supp. 684 (S.D.N.Y. 1973), the prosecuting attorney, prior to trial, read a transcript of defendant's testimony given at a bankruptcy hearing. The court dismissed the charges on the ground that the exposure to the privileged testimony precluded any showing that it had not been used in any respect. Its rationale is as follows: "We have here one of the problems presented by the opinion in *Kastigar.* How do you make sure that a person who has testified under a grant of immunity will be protected against subsequent criminal charges to the same extent as if he had originally pleaded the Fifth Amendment? . . . It is difficult for the court to speculate as to the effect that the reading of the minutes have had on the conduct and thinking processes of the Assistant charged with the prosecution of the case.

"It appears to me that once the subject matter was touched upon in the privileged testimony, and the prosecutor has read it, he could have used it in a variety of ways in this criminal prosecution. The possibility of such use, and the impossibility of clearly showing that the use did not occur calls for the holding in this case that the defendants were denied the constitutional protection that their silence would have given them."

In *United States v. McDaniel,* 482 F.2d 305 (8th Cir. 1973), the court reached a similar holding. Because the United States attorney had read the defendant's immunized grand jury testimony prior to filing the

---

[1] 18 U.S.C. §6002 provides:
"[N]o testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case. . . ."
"11 U.S.C. §25(a) provides:
"[N]o testimony, or any evidence which is directly or indirectly derived from such testimony, given by him shall be offered in evidence against him in any criminal proceeding. . . ."

indictments, the court vacated the defendant's conviction. The court emphasized the "immeasurable subjective effect" of the prosecutor's reading of the testimony and the possible uses which he could have made of it, in this statement:

"Such use could conceivably include assistance in focusing the investigation, deciding to initiate prosecution, refusing to plea bargain, interpreting evidence, planning cross-examination and otherwise generally planning total strategy."

*See also* before remand *United States v. McDaniel,* 449 F.2d 832 (8th Cir. 1971) (the reading of the transcript prior to trial constituted "prima facie use" of the immunized testimony.)

■ Although all of the above cases concern the use of immunized testimony in federal prosecutions, the rationale applies with equal force to bar the use of federally-immunized testimony in state prosecutions. The law is well-settled that state-granted immunity must be respected by federal prosecutors and vice versa. *Murphy v. Waterfront Commission,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964); *Wheeler v. District Court,* 184 Colo. 193, 519 P.2d 327 (1974).

In the present case, the district attorney, his assistant (who as a creditor of the estate also participated in questioning the defendant about his business affairs), and his investigators attended the bankruptcy hearing. The district attorney took extensive notes, as the defendant provided detailed information regarding the operation of his business, sale and location of missing wheat, transactions in future contracts, past indebtedness, and business agents. Approximately six months after this hearing, the district attorney filed informations charging defendant with theft. The charges directly related to matters testified to by the defendant at the bankruptcy hearing. We note in particular that at the evidentiary hearings the district attorney admitted that he "found out" at the bankruptcy hearing how the defendant "operated" his business, where the defendant's grain elevators were located, and that the defendant had been insolvent since 1969. Notwithstanding this exposure to privileged testimony, the district attorney made no showing that he had segregated information learned at the hearing from information he may have acquired independently.

■ Given the extensive exposure of the district attorney and his staff to immunized testimony, we deem it highly improbable that the prosecution did not make some use of the testimony. Therefore, we hold that the trial court correctly ruled that participation by the district attorney and his staff at the bankruptcy hearing constituted a prima facie use of the defendant's immunized testimony and the record amply supports the conclusion that the prosecution had not met its heavy burden of affirmatively establishing that the evidence it used as a basis for the charges was derived solely from independent sources.

The other contentions advanced by the district attorney have no merit and require no discussion.

We affirm the trial court's judgment.