The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

Langburn FISHER, Jr.,
Defendant-Appellee.

No. 82SA416.

Supreme Court of Colorado,
En Banc.

Jan. 24, 1983.

QUINN, Justice.

The People, pursuant to C.A.R. 4.1, bring this interlocutory appeal from an order of the Weld County District Court suppressing evidence of a videotaped interview of the defendant, Langburn Fisher, Jr., conducted by an Oklahoma City detective in March 1980 while criminal charges were pending against the defendant in Oklahoma. During the interview the defendant answered questions relating to a series of burglaries committed by him, on the express condition that, as promised by the interviewing officer, the videotape would not be used against him in any criminal proceeding. We affirm the suppression ruling.

I.

The record of the suppression hearing conducted before the district court consists of the testimony of two prosecution witnesses, Detective James Cain of the Oklahoma City Police Department and Oklahoma City Deputy District Attorney Donald Easter, and an exhibit entitled "Release" which was executed by the defendant in Oklahoma City, Oklahoma, on March 30, 1980. The prosecution's evidence at the suppression hearing established the following facts.

In January of 1980 the defendant was arrested in Oklahoma City and was subsequently charged with at least two counts of burglary.[1] On the night of his arrest the defendant confessed to several residential burglaries in the Oklahoma City area. Detective Cain, who also served as an instructor at the Oklahoma City Police Academy, asked the defendant if he would be willing to submit to a videotaped interview of his burglary activities, which could then be used as an instruction device for police cadets. Detective Cain told the defendant that during the interview he would be asked questions relating to his methods of perpetrating burglaries and disposing of stolen property. The defendant at this time agreed to submit to the interview, which was to take place at some later date.

Stanley C. Peek, Dist. Atty., H. Lee Schmidt, Deputy Dist. Atty., Greeley, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, Jody Sorenson Theis, Deputy State Public Defender, Denver, for defendant-appellee.

1. The record does not reveal the exact number or nature of the Oklahoma charges. One place in the record indicates that the defendant was charged with several counts of burglary and receiving stolen property, and another place indicates that the Oklahoma charges consisted of two counts of burglary.

The defendant was represented in the Oklahoma criminal prosecution by an attorney, Gary Quick. Detective Cain mentioned the prospective videotaping to Quick and also talked to the defendant about the matter on several occasions. On March 27, 1980, the defendant appeared in court at Oklahoma City for a preliminary hearing. Assistant District Attorney Easter at this time offered him and his attorney a plea bargain which included the following provisions: full cooperation with Oklahoma law enforcement agencies in clearing up several burglaries and in providing information about the location of property he had stolen; a plea of guilty to one of the charges pending against him; and a sentence of five years on his plea, with either two or three years of the sentence served in prison and the balance to be suspended. The defendant requested a few weeks to think about the offer.

Shortly after the defendant's appearance in court, Detective Cain told him that he needed to make the videotape. He arranged with the defendant to appear at the police training academy on March 31, 1980, for the videotaped interview. The defendant appeared, alone, on the scheduled date. Detective Cain gave him a document entitled "Release," which stated that the videotape could be used "in the training of police officers or any law enforcement officer," and, as long as the defendant's identity was concealed as much as possible, it also could be used on public television. The "Release" expressly stated that "I [Fisher] further refuse to give my permission for this video

tape to be used in any criminal procedings [sic] against myself...."[2] The defendant signed the Release and the videotaped interview was then conducted. During the interview the defendant described numerous residential burglaries which he claimed to have committed in the Oklahoma City area. He also described his methods of choosing residential targets, gaining entry into houses, selecting property to take, avoiding capture, and disposing of the stolen property.

When the videotape was made Detective Cain knew there were some pending plea negotiations between the district attorney's office and the defendant. However, according to Cain's testimony, the videotaped interview was not part of any plea agreement. Further, Cain testified that the defendant was not advised of any constitutional rights prior to the interview because "[t]hese [films] weren't to be used in court." The Oklahoma City Assistant District Attorney learned of the videotaped interview only after it had been completed. He also testified that the videotaping was not part of the plea agreement.

Sometime in June 1980 the defendant ultimately entered a plea of guilty to one of the felony counts pending against him in Oklahoma City. The defendant's sentence was suspended because, according to the Assistant District Attorney, he completely cooperated with the Oklahoma City Police Department in clearing up other burglaries and in recovering stolen property.

2. The complete terms of the Release were as follows:

"I, LANGBURN FISHER, JR., do hereby give my permission, of my own free will, and without threats, promises or coercion of any kind, for a Video Tape made at the Oklahoma City Police Department Training Academy on 3–31–80, to be used in the following manner:
1) For any portion of this Video Tape to be used in the training of police officers or any law enforcement officer, in any manner deemed necessary.
2) For any portion of this Video Tape to be used in college class room instruction, in any manner deemed necessary.
3) For any portion of this Video Tape to be used on public television, with the provision

that my identity be concealed as much as possible, in any manner deemed necessary.
"I further refuse to give my permission for this video tape to be used in any criminal procedings [sic] against myself or any other person, or to be shown to any group of inmates currently incarcerated in the Oklahoma State Penal System without first making assurances that my identity will be concealed.
"I hereby release all liability against any member of the Oklahoma City Police Department and release liability against the City of Oklahoma City and release liability against the State of Oklahoma."

In April of 1982 the defendant was arrested in Greeley, Colorado, and charged in the Weld County District Court with several counts of second degree burglary[3] and felony theft,[4] all of which arose out of a series of alleged residential burglaries committed during the preceding two months in Greeley. The defendant pled not guilty to the charges. Knowing that the prosecution intended to offer the videotape into evidence at trial, the defendant filed a motion to suppress this evidence. The district court granted the motion, concluding that the defendant was entitled to enforcement of the promise not to use the videotape in any criminal proceeding.[5] This appeal followed.

■ The People's claim, when reduced to its basic components, is twofold. First they argue that the trial court erroneously suppressed the videotape because no constitutional right was violated by its procurement; and alternatively they argue that, even if the videotape was unconstitutionally acquired, due process of law is not offended by admitting it in the pending Colorado prosecution. These arguments, in our view, misapprehend the constitutional basis for the enforcement of governmental promises made to an accused during the pendency of criminal charges against him. We hold that because the officer's promise implicated other constitutional rights of the defendant, because the defendant took detrimental action in reasonable reliance upon the promise, and because no other remedy short of enforcement of the promise would secure fundamental fairness to the defendant, the Due Process Clauses of the United States and Colorado Constitutions, *U.S. Const.* Amend. XIV; *Colo. Const.* Art. II, Sec. 25, require the suppression of the Oklahoma videotape in the pending Colorado prosecution.

## II.

Before addressing the propriety of the suppression order in this case, we examine the doctrinal basis for the judicial enforcement of governmental promises made to an accused during the pendency of criminal charges against him. Any analysis of this area of the law must begin with a consideration of *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). Santobello, who had been charged by the state of New York with two felonies, agreed to plead guilty to a lesser included offense in exchange for the prosecutor's agreement not to make a sentencing recommendation. By the time of the sentencing hearing, however, a different prosecutor was assigned to the case, and he recommended that Santobello receive the maximum punishment. The sentencing judge,

---

3. Section 18–4–203, C.R.S.1973 (1978 Repl.Vol. 8 and 1982 Supp.).

4. Section 18–4–401, C.R.S.1973 (1978 Repl.Vol. 8 and 1982 Supp.).

5. The trial court ruled, in pertinent part, as follows:

   "I think we undermine the whole principles of [the] integrity of our society if we think that the state is not bound by its agreements. And if there is an agreement, then the court must enforce it. I think it is so clear that there was an agreement in this case ... [the District Attorney] used the word 'pending' in [his] argument, and there is no such word in this contract. Had the word 'pending' been in there we would not have this question. But the agreement ... made by the representative of law enforcement to obtain this statement ... is that it not be used for any criminal proceeding, and that was the basis upon which [the statement] was given...."

   *      *      *      *      *      *

"This was a contract on behalf of the state.... The People have clearly obtained substantial information from the defendant during that period of time when [there were] pending criminal charges, and they obtained it on a contractually limited basis. It's very clear what the agreement was. And I feel the court is bound by it and has to apply and uphold it. And to do otherwise would fly in the absolute face of what has clearly been agreed to by the state. To say that the authority of Oklahoma may act in one manner and the State of Colorado has no responsibility to the total concept of law enforcement's responsibilities in dealing with the public ... would be a strange interpretation of their responsibilities.... I feel that I cannot go around that agreement to permit that tape to be used in any criminal proceeding in which it has been agreed that it would not be used. The motion to suppress is granted."

stating that he was not influenced by the prosecutor's recommendation, imposed the maximum sentence of one year. Santobello thereafter unsuccessfully attempted to withdraw his guilty plea. The United States Supreme Court vacated Santobello's conviction and remanded the case to the state court for a determination of the appropriate relief which should be accorded him.[6] The Court pointed out that plea bargaining, although an essential component of the criminal justice system, "must be attended by safeguards to insure the defendant what is reasonably due in the circumstances." *Id.* at 262, 92 S.Ct. at 499, 30 L.Ed.2d at 433. "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262, 92 S.Ct. at 499, 30 L.Ed.2d at 433.

Cases subsequent to *Santobello* have required enforcement of governmental promises where the accused, in reliance upon the promise, has taken some detrimental action in reasonable expectation of receiving the benefit reciprocally promised by the government. For example, in *Palermo v. Warden, Green Haven State Prison,* 545 F.2d 286 (2d Cir.1976), *cert. dismissed,* 431 U.S. 911, 97 S.Ct. 2166, 53 L.Ed.2d 221 (1977), the state was held to be estopped from asserting a prosecutor's promise of early parole to be *ultra vires:* "where a defendant pleads guilty because he reasonably relies on promises by the prosecutors which are in fact unfulfillable, he has a right to have those promises fulfilled." *Id.* at 296. Similarly, in *Correale v. United States,* 479 F.2d 944 (1st Cir.1973), the court held that where a United States attorney breached his promise to recommend as part of a plea bargain an impermissible federal sentence concurrent with a state sentence then being served, the defendant was entitled to a suspended sentence under probationary conditions, since that sentence best approximated the specific enforcement of the prosecutor's promise. In *United States v. Carter,* 454 F.2d 426 (4th Cir.1972), *cert. denied,* 417 U.S. 933, 94 S.Ct. 2646, 41 L.Ed.2d 237 (1974), where the defendant sought dismissal of a federal prosecution for forgery and conspiracy on the basis of a promise made to him by a federal prosecutor in another district that, "except for the charge to which he pleaded guilty, defendant would not be prosecuted for commission of the crimes he divulged," the court held the defendant to be entitled to an evidentiary hearing and to enforcement of the promise if these allegations were proven.[7]

While an analogy to substantive and remedial contract law is sometimes used in

**6.** "[W]e conclude that the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case to the state courts for further consideration. The ultimate relief to which petitioner is entitled we leave to the discretion of the state court, which is in a better position to decide whether the circumstances of this case require only that there be specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or whether, in the view of the state court, the circumstances require granting the relief sought by petitioner, *i.e.,* the opportunity to withdraw his plea of guilty." *Santobello v. New York,* 404 U.S. 257, 262–63, 92 S.Ct. 495, 499, 30 L.Ed.2d 427, 433 (1971).

**7.** "If there be fear that an United States Attorney may unreasonably bargain away the government's right and duty to prosecute, the solution lies in the administrative controls which the Attorney General of the United States may promulgate to regulate and control the conduct of cases by the United States Attorneys and their assistants. The solution does not lie in formalisms about the express, implied or apparent authority of one United States Attorney, or his representative, to bind another United States Attorney and thus to visit a sixteen year sentence on a defendant in violation of a bargain he fully performed. There is more at stake than just the liberty of this defendant. At stake is the honor of the government [,] public confidence in the fair administration of justice, and the efficient administration of justice in a federal scheme of government." *United States v. Carter,* 454 F.2d 426, 428 (4th Cir. 1972).

Although the court's opinion in *Carter* was prepared prior to the Supreme Court's decision in *Santobello,* the court noted in an addendum to its opinion that *Santobello* provided additional support for the result.

fashioning a remedy for an accused aggrieved by a broken governmental promise, the principle underlying *Santobello* "is the existence of a constitutional right in the defendant to be treated with 'fairness' throughout the process...." *Cooper v. United States,* 594 F.2d 12, 16 (4th Cir. 1979). Although contractual analogies will most often provide a reliable inclusive test for the existence of a constitutional right and violation, they do not necessarily provide an equally reliable exclusive test:

"Conduct by government prosecutors that in the market place would constitute breach of contract or give rise to promissory estoppel will practically always reflect constitutionally unfair conduct in transactions between sovereign and citizen in matters of liberty and punishment. But the obverse of this does not follow. Just because the elements of express contract or promissory estoppel have not been realized in particular plea negotiations cannot mean conclusively that there has been no unfairness in the constitutional sense. This is primarily because contract law is not concerned solely with fairness. True, it contains many elements having a moral or ethical cast designed to ensure minimally fair dealing in the market place, and these elements are readily transposed to the plea bargain context to provide the basis for holding government to its undertakings. But contract law also contains many elements of an essentially neutral moral and ethical cast. Some of these reflect merely a pragmatic necessity to force certainty of consequences in complicated negotiation exchanges. Others reflect an ultimately economic and utilitarian conception of bargaining objects.... These are all well and good for contract law, but constitutional decisions cannot be made to turn in favor of the government on the fortuities of communications or on a refusal to accord any substantive value to the reasonably induced expectations that government will honor its firmly advanced proposals." *Id.* at 17.

*Santobello* and its progeny thus make clear that the Due Process Clause of the Fourteenth Amendment furnishes the basis for the enforcement of a governmental promise made to an accused during the pendency of a criminal prosecution against him. The right to enforcement does not depend upon proof that some independent constitutional right of the accused was impaired or implicated by the promise. *See Cooper v. United States, supra* (government required to honor plea bargain proposal even though such proposal withdrawn before effectively accepted by the defendant). *Cf. Workman v. Commonwealth,* 580 S.W.2d 206 (Ky.1979) (governmental promise to drop charges if defendant passed polygraph examination requires reversal of conviction where defendant submitted to and successfully passed the polygraph test). Although the defendant's performance will ordinarily involve detrimental reliance in the form of a relinquishment of some constitutional right—such as, for example, the privilege against self-incrimination, the defendant's right to counsel, or his right to a jury trial—proof of such relinquishment is not an indispensable component of the defendant's claim for enforcement of the promise. Such proof, rather, renders the claim for specific performance or some equivalent substitute more compelling. Nor is it essential that the governmental promise arise in the context of a formal "plea bargain." *See People v. Reagan,* 395 Mich. 306, 235 N.W.2d 581 (1975) (prosecutor's promise to dismiss charges upon defendant's successful passage of polygraph examination requires reversal of conviction where defendant prosecuted notwithstanding successful completion of polygraph test). "The standards of commerce do not govern, and should not govern, the administration of criminal justice." *Id.* at 314, 235 N.W.2d at 585.

We need not, however, in this case determine the outer limits of an accused's due process entitlement to fulfillment of a governmental promise where the promise does not involve some tangible act of reliance that implicates an independent constitutional right of the accused. The reason we need not do so here is because not only were

the defendant's privilege against self-incrimination and his constitutional right to counsel implicated by the videotaped interview, but also the defendant reasonably and detrimentally relied upon Detective Cain's promise by fully performing his side of the bargain, and, finally, a remedy short of actual enforcement would not approximate fundamental fairness under the circumstances of this case. We will examine each of these factors in turn.

### III.

### A.

■ With respect to the first factor, it is clear that the defendant's privilege against self-incrimination and his right to counsel were implicated by the interview with Detective Cain. The constitutional privilege against self-incrimination, *U.S. Const.* Amend. V and XIV; *Colo. Const.* Art. II, Sec. 18, applies whenever the response to a question may "furnish a link in the chain of evidence needed to prosecute," *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118, 1124 (1951), and may be asserted against "official questions put to [an accused] in any . . . proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley,* 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274, 281 (1973). Detective Cain's interview consisted of questions which were necessarily calculated to, and did in fact, elicit incriminating responses from the defendant pertaining to the commission of several burglaries in the Oklahoma City area.

Similarly, the defendant's right to counsel was implicated by the videotaped interview. In *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), the United States Supreme Court held that the government could not deliberately elicit incriminating information from a defendant after the commencement of a criminal prosecution against him unless defense counsel was present or the defendant validly

waived his right to counsel. *Accord United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980); *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). Anything less would deny a defendant " 'effective representation by counsel at the only stage when legal aid and advice would help him.' " *Massiah v. United States,* 377 U.S. at 204, 84 S.Ct. at 1202, 12 L.Ed.2d at 249, *quoting Spano v. New York,* 360 U.S. 315, 326, 79 S.Ct. 1202, 1209, 3 L.Ed.2d 1265, 1273 (1959) (Douglas, J., concurring). It is clear that the interview took place after the Oklahoma prosecution had been initiated and that Detective Cain deliberately elicited incriminating information from the defendant without the defendant's attorney being present.

■ The People urge two primary arguments to support their claim that the videotape was constitutionally obtained and therefore erroneously suppressed. One argument is that Detective Cain's promise that the videotape would not be used in criminal proceedings against the defendant removed the interview from constitutional protection. We find this argument to be without merit. The presence or absence of constitutional rights is not controlled by a law enforcement officer's assessment of the purposes of interrogating an accused. Rather, where, as here, the defendant is subjected to an incriminating interview during the pendency of a criminal proceeding in which he is represented by counsel, a police agent's promise, whatever its nature, does not provide the defendant with the substantive equivalent of the constitutional privilege against self-incrimination and the right to counsel.

■ The People next argue that even if the privilege against self-incrimination and the right to the presence of counsel applied to the videotaped interview, the defendant waived those rights. Even if such a waiver occurred, however, it would not follow that the defendant is thereby less entitled to enforcement of Detective Cain's promise.[8] As the analogous plea bargain

---

8. In some circumstances a waiver of the privi-

lege against self-incrimination may be implied

situations illustrate, see Part II, supra, violation of an independent constitutional right is not essential to an accused's entitlement to fulfillment of related promises. Rather, it is the intentional *relinquishment* or *waiver* of the constitutional right that gives rise to an accused's due process claim for enforcement of the governmental promise. Assuming, therefore, as the People contend, that the defendant's privilege against self-incrimination and right to counsel were not violated but instead were waived or relinquished on the occasion of the videotaped interview, such waiver or relinquishment would not serve to extenuate in the least the defendant's due process right to enforcement of the governmental promise.[9]

### B.

The second factor critical to the defendant's right to enforcement of Detective Cain's promise is the defendant's perform- ance of his part of the bargain by answering incriminating questions addressed to him in the videotaped interview. The People argue that the defendant had no legitimate expectation of non-use of the videotape in any future criminal proceedings and therefore did not rely upon any such promise in submitting to the interview. This argument is premised on the notion that the "Release" signed by the defendant, although stating that the videotape would not be used "in any criminal proceedings" against the defendant, was actually limited to any *pending* criminal proceeding.

▆▆▆▆ The People's argument, in our view, does not merit extended discussion. No evidence was submitted at the suppression hearing indicating that Fisher was advised of the limited meaning which the People now seek to attribute to the statement, or that his understanding of the scope of the promise was somehow unreasonable.[10]

by the failure of the accused to assert it. *See generally Garner v. United States*, 424 U.S. 648, 96 S.Ct. 1178, 47 L.Ed.2d 370 (1976). In order to demonstrate a valid waiver of the right to counsel, however, the prosecution must show a knowing, intelligent, and voluntary relinquishment of the right. *See, e.g., Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); *Carnley v. Cochran*, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962). Although the district court did not address the waiver issue in its ruling, we point out that the record fails to disclose that the defendant was ever informed of his right to counsel by Detective Cain immediately prior to the videotaping, much less that the defendant waived that right. Mere evidence of a failure to assert the right to counsel followed by a cooperative response to interrogation does not amount to the type of showing required to establish a valid waiver. *See, e.g., Edwards v. Arizona, supra; Tague v. Louisiana*, 444 U.S. 469, 100 S.Ct. 652, 62 L.Ed.2d 622 (1980); *Brewer v. Williams, supra; People v. Chavez*, 632 P.2d 574 (Colo.1981); *People v. Lowe*, 200 Colo. 470, 616 P.2d 118 (1980).

**9.** The People also argue that even if there was a constitutional violation at the time the videotape was obtained, the exclusionary rules of evidence should not apply to exclude the videotape from the pending Colorado proceedings. Their argument in this respect is that the videotaped statement was given prior to the commis- sion of the Colorado offenses, and, therefore, there was no hazard of self-incrimination with respect to uncommitted offenses nor was there any right to counsel when the statement was made. The People's argument, in our view, misconstrues the scope of the exclusionary rule. The suppression of the videotape because of a violation of the privilege against self-incrimination or the right to counsel would not amount to an extension of these constitutional rights to crimes as yet uncommitted. On the contrary, if the defendant's then existing constitutional rights were violated when the statement was obtained, suppression would be appropriate not because the defendant's constitutional rights extend to as yet uncommitted offenses but, rather, because the videotape was acquired in an unconstitutional manner thereby rendering it inadmissible in any criminal proceeding.

**10.** The People in their brief point to some of Detective Cain's suppression testimony in arguing that Detective Cain's promise of non-use was conditioned on the defendant's law abiding behavior. Detective Cain's belief that the defendant intended to cease committing future crimes was based primarily upon the defendant's statement during the interview that "if he had to do it over again he wouldn't be involved in crimes." Detective Cain admitted that he did not talk to the defendant about using or not using the videotape upon the defendant's commission of other offenses. What the detective did tell the defendant was that "I would be

Governmental officials, especially where constitutional rights are involved, may not make broad promissory representations to an accused and then seek to attribute a narrow scope or significance to these promises in an effort to escape resulting obligations.[11] The practical consequences which a contrary result would hold out for public confidence in the fair administration of justice are quite obvious. *See Cooper v. United States, supra.* The exclusion of the videotape in this case does no more than grant to the defendant the right to judicial enforcement of a governmental promise, upon which he reasonably and detrimentally relied and which another state now seeks to repudiate.

### C.

The last factor supporting our resolution of this matter relates to the unavailability of some other remedy, short of actual enforcement of the promise, that would render substantial justice to the defendant. The People argue that the defendant has no due process right to enforcement because Detective Cain lacked authority to bind Colorado officials. The appropriate consideration, as we see it, is not the power of an Oklahoma City police officer to bind another state, but, rather, the scope of a defendant's due process right to enforce a governmental promise not to use evidence against him, upon which he detrimentally relied in furnishing incriminating information to the police.[12]

The district court in this case was powerless to vacate the defendant's Oklahoma plea of guilty and the conviction entered thereon, and thereby restore to him the status which predated the videotaped interview of March 31, 1980. Nor could the district court exercise extraterritorial jurisdiction by prohibiting Oklahoma authorities from using the videotape in a manner contrary to that authorized in the Release. The defendant in this case has merely requested what the district court has authority to grant—specific performance of the governmental promise in the pending Colorado prosecution. Anything less than that remedy under the circumstances of this case could not approximate that substantial justice which the Due Process Clause guarantees to an accused. Moreover, the effect of withholding judicial enforcement of the promise here would involve the trial court, through its act of admitting the evidence, in the artifice perpetrated upon the defendant, a result which we refuse to countenance. *See, e.g., Palermo v. Warden, Green Haven State Hospital, supra* (state estopped from asserting that prosecutorial promise of early parole on sentence in exchange for defendant's return of stolen jewelry was *ultra vires* as an unlawful consideration); *Correale v. United States, supra* (prosecutor's promise of a sentence less than statutory minimum and contrary to parole board's regulation held to be specifically enforceable); *United States v. Carter, supra* (prosecutor's promise that charges in a different district would be dropped required dismissal of those charges); *United States v. Lieber,* 473 F.Supp. 884 (E.D.N.Y.1979) (prosecutor's promise that Internal Revenue Service would not bring charges held to

---

extremely displeased were he to commit crimes again." This evidence hardly amounts to a showing that the detective's promise was conditioned in the manner proposed by the People.

11. It is not constitutionally significant, in our view, that the request for videotaping and the promise of non-use originated with Detective Cain rather than the prosecutor. Detective Cain was no less an agent of the government than the prosecutor and was at least equally as capable of implicating the defendant's constitutional rights by his request. *See, e.g., Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246

(1964); *United States v. Barrett,* 390 F.Supp. 1022 (D.S.C.1975); *State v. Session,* 91 N.M. 381, 574 P.2d 600 (1978).

12. The problem created by this case is easily avoided by responsible governmental officials instructing and requiring law enforcement officers to refrain from making promises beyond their ability to perform. This is a relatively simple solution within the power of any state whereas, in contrast, a criminally accused cannot realistically be expected to know or to discover the extent of a law enforcement officer's authority in the matter of criminal prosecutions.

prohibit such charges); *Chaipis v. State Liquor Authority,* 44 N.Y.2d 57, 375 N.E.2d 32, 404 N.Y.S.2d 76 (1978) (where liquor licensee entered guilty plea to charges of permitting prostitution on premises and prosecutor made promise, beyond his power to make, that liquor license would be preserved, prosecutor's promise entitled to weighty consideration by liquor licensing authority at revocation hearing).

## IV.

Our holding in this case necessarily proceeds from the particular facts in the record before us. When a defendant has been charged with a crime and is represented by counsel, and a law enforcement officer involved in the investigation of the case requests a videotaped interview pertaining to the defendant's criminal activities and expressly promises not to use the videotape in any criminal proceeding against him, and thereafter the accused, in reasonable detrimental reliance upon the officer's promise, submits to the incriminating interview, the Due Process Clauses of the United States and Colorado Constitutions, *U.S. Const.* Amend. XIV; *Colo. Const.* Art. II, Sec. 25, entitle the accused to enforcement of the governmental promise where, as here, no other remedy is appropriate to effectuate the accused's legitimate expectation engendered by the governmental promise.

The suppression ruling is affirmed.

HODGES, C.J., and ROVIRA, J., specially concur.

ROVIRA, Justice, specially concurring:

I specially concur in the judgment. However, I reach the conclusion that the People are precluded from using the videotape on somewhat different, and I believe more fundamental, grounds. The Oklahoma City Police Department promised Fisher that the videotape would not be used in any criminal proceeding. Fisher then relied on the promise and granted an interview. This is sufficient in my view to warrant suppression of the tape.

Essentially what happened here is that the defendant was given "use-derivative use" immunity by the Oklahoma City Police. *See Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). The rule is well settled that a grant of immunity by the federal government is binding on the states, and vice versa. *People v. Casselman,* 196 Colo. 304, 583 P.2d 933 (1978); *Murphy v. Waterfront Commission,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). The justification for this rule is that a grant of immunity can be valid only if it is coextensive with the scope of the privilege against self-incrimination. The rule thus applies with equal force to the respect that must be afforded one state's grant of immunity by another. *See People v. Lucero,* 196 Colo. 276, 584 P.2d 1208 (1978).

Although generally grants of immunity must be strictly in accordance with the applicable immunity statute, where a state official promises that certain information if given will not be used in court, the defendant is entitled under principles of equity and due process to enforcement of the promise, at least to the extent of his detrimental reliance. *See Hammers v. State,* 261 Ark. 585, 550 S.W.2d 432 (1977); *Rowe v. Griffin,* 676 F.2d 524 (11th Cir.1982).

Contrary to the suggestion of the People, this rule does not unduly impair law-enforcement efforts. In this case the defendant's statement aided the law-enforcement efforts of Oklahoma, while leaving the State of Colorado "in substantially the same position as if the witness had claimed his privilege in the absence of a state grant of immunity." *Murphy v. Waterfront Commission,* 378 U.S. at 79, 84 S.Ct. at 1610.

I am authorized to say that Chief Justice HODGES joins in this special concurrence.