The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Michael R. McCORMICK,
Defendant–Appellant.

Nos. 87CA0081, 87CA1566.

Colorado Court of Appeals,
Div. I.

March 12, 1992.

Rehearing Denied April 30, 1992.

Certiorari Granted Oct. 26, 1992.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Cheryl A. Linden, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Miller, Hale & Harrison, Daniel C. Hale, Boulder, for defendant-appellant.

Opinion by Judge DUBOFSKY.

In this consolidated case, defendant, Michael R. McCormick, appeals the judgments of conviction entered on jury verdicts finding him guilty of first degree murder, felony murder, second degree kidnapping, possession with intent to distribute a schedule II controlled substance, and numerous theft or fraud related offenses. We reverse the judgments in part and remand for further proceedings.

In 1985, a fourteen count indictment, including charges relating to drug possession (the drug case) and theft and fraud (the theft case), was filed against defendant. Because of a lack of probable cause, one count was dismissed.

On January 23, 1986, defendant and the prosecution entered into an agreement

which provided that, if defendant met his obligations under the agreement, the prosecution would arrange for him to serve a period of actual incarceration of approximately two years for any convictions arising from the pending indictment and would further arrange that such sentence would be served concurrently with any other sentences imposed in connection with cases then pending against him in the State of Colorado.

The agreement provided that before defendant could receive the benefit of the bargain, he had to provide truthful, accurate and verifiable information concerning the homicide of a specific victim (Bert Donoho) and any other homicides of which defendant had knowledge and had to assist the law enforcement authorities in locating the bodies of such victims. The agreement also required defendant to take and pass a polygraph test regarding his participation in the homicides. On its part, the prosecution promised defendant that he would not be charged with or prosecuted for any killing on which he gave information provided he was not the *perpetrator* of the homicide in question.

The agreement also specified that if evidence, other than that derivative from defendant's statements, established probable cause, as determined judicially or by a grand jury, that defendant personally committed the homicide of Bert Donoho or any other verifiable homicide, then the agreement was null and void and all parties were released from all obligations thereunder. The parties also stipulated that probable cause could not be based on the denial and counter-allegations of the person or persons accused by the defendant.

Pursuant to the agreement, defendant made protracted and detailed statements to law enforcement officers on January 23, April 23, April 29, and May 22, 1986, all of which implicated his father in a number of homicides. He also testified against his father at the latter's preliminary hearing on March 13, 1986. Based largely on defendant's testimony, the court found there was probable cause to proceed with the first degree murder trial against his father.

Despite this probable cause determination, the prosecution dismissed all charges against his father with an admonishment that such charges might be brought in the future. Defendant passed the lie detector test and led investigators to the bodies of four homicide victims, including Bert Donoho.

Pursuant to the plea agreement, disposition of the theft case was first set for April 17, 1986, but was postponed at the prosecutor's request to May 28, 1986, and then to July 17, 1986. Defendant waived his speedy trial rights during this period. When the prosecution asked for these postponements of the disposition date, it did not indicate to defendant or the court that the agreement was no longer in effect. To the contrary, the district attorney's office indicated several times, on the record, it believed defendant's claim that his father was the perpetrator of the Donoho murder.

On June 30, 1986, the prosecution informed defendant's counsel by letter that it considered the plea agreement null and void because of defendant's failure to fulfill his obligations under the agreement. On July 9, 1986, murder and kidnapping charges (the murder case) involving the disappearance and death of Donoho were filed against defendant.

On July 21, 1986, the District Attorney's Office for the First Judicial District was disqualified from the theft case. Over defendant's objection, the previously appointed special prosecutor from the Attorney General's Office was permitted to continue in the theft case. The court permitted the special prosecutor to continue because it concluded that a total lack of continuity of prosecutors would significantly interfere with the effective prosecution of the case.

Following a hearing, defendant's motion to enforce the plea agreement was denied. The trial court determined that, although defendant had complied with significant portions of the agreement, that agreement had called for total compliance and defendant had not met that standard. Defendant had previously admitted to withholding some information, and the court also determined that defendant gave inconsis-

tent statements during his interviews. Accordingly, the trial court concluded that the failure of defendant totally to comply with the agreement freed the prosecution from its obligations with regard to the theft case. In August 1986, defendant was tried and convicted by the court on the theft case.

Because of an inability to subpoena a necessary witness, a continuance was granted the prosecution as to the drug case. In November, defendant was tried and convicted by a different court on the drug case. Defendant's motion to dismiss for violation of his right to a speedy trial because of the prosecution's requested delay in the drug case was denied.

On August 8, 1986, all prosecutors involved in the theft case, including the special prosecutor, were disqualified from the murder case. The theft trial began on August 12, 1986, with the original special prosecutor participating as one of the prosecutors. A new special prosecutor was appointed on the murder case on August 25, 1986. Another hearing was held regarding the enforceability of the plea agreement as to the murder charges. The trial court hearing the murder case also ruled that the extent of defendant's compliance was insufficient to warrant the agreement being enforced and thus denied defendant's motion to enforce the plea agreement.

Further, although the court found that the murder and theft cases had arisen from the same criminal episode, it denied defendant's motion to dismiss the murder case for violation of compulsory joinder requirements. The trial court ruled that since on the date jeopardy attached in the theft case, the special prosecutor in that case had already been disqualified from the murder case, a continuance of the theft case could not have been requested in order to join the two cases.

Defendant was tried and convicted in the murder case. Defendant's statements made pursuant to the plea agreement were used extensively to impeach him during the murder trial.

## I.

Defendant contends that prosecution of the murder and kidnapping charges was barred by the failure of the prosecution to comply with compulsory joinder requirements. We agree.

■ A defendant may not be tried for an offense if he has previously been tried for another offense arising out of the same transaction, and if the district attorney has knowledge of each of the offenses when the prosecution is commenced. Section 18-1-408(2), C.R.S. (1986 Repl.Vol. 8B); Crim.P. 8(a).

■ In *Jeffrey v. District Court*, 626 P.2d 631 (Colo.1981), our supreme court determined that a prosecution *commences* when jeopardy attaches in the first trial. Jeopardy attaches for joinder purposes when the first witness is placed under oath in the initial case to which the subsequent cases should have been joined. *Jeffrey v. District Court, supra.* In *Jeffrey*, the court stated:

The purposes of compulsory joinder are to protect the accused against the oppressive effect of sequential prosecution based on conduct occurring during the same criminal episode and to conserve judicial and legal resources that otherwise would be wasted in duplicative proceedings.

*See also People v. Robinson*, 774 P.2d 884 (Colo.1989).

■ The statutory compulsory joinder bar applies when five elements are present: 1) several offenses have been committed in the same judicial district; 2) the offender is prosecuted; 3) there is prosecutorial knowledge of the several offenses at the commencement of the prosecution; 4) the offenses arose out of the same criminal episode; and 5) the offender has been previously subjected to a single prosecution. *People v. Patrick*, 773 P.2d 575 (Colo.1989). All of these elements are present here.

Furthermore, § 18-1-408(2) expressly provides that:

Any offense not thus joined by separate count cannot thereafter be the basis of a subsequent prosecution.

This language leaves the judiciary little discretion but to dismiss later tried cases if, as here, the statutory conditions mandating joinder have been met.

There were, of course, potential avenues available to the district attorney to seek or maintain severance of the counts if, for some compelling reason, the charges should not have been tried together. *See* § 18–1–408(4), C.R.S. (1986 Repl.Vol. 8B). But, the district attorney neither moved to consolidate the theft and murder charges, nor did he request the court to excuse severance because joinder would have been improper.

The People contend, and the trial court found that, since all prosecutors involved in the theft case had been disqualified from the murder case, no competent prosecutor had knowledge of the murder case when jeopardy attached in the theft case and this excuses the prosecutor's failure to join cases. We disagree.

Defendant was indicted in the theft case in June 1985. The body of the victim was discovered, through defendant's information and assistance, in January 1986. An information charging defendant with murder and kidnaping was filed on July 9, 1986. Until August 8, 1986, when the disqualification of both prosecutors from the murder case took effect, the same two attorneys, either together or separately, had appeared on behalf of the People in both the theft and the murder cases. It was only from Friday, August 8, until Monday, August 12, when jeopardy attached in the theft case, that the theft case prosecutors might have been incompetent to seek joinder. Furthermore, on August 12, the prosecutors in the theft case could have sought joinder in the murder case and requested a continuance of the theft case. *See* § 18–1–405(6)(g)(II), C.R.S. (1986 Repl.Vol. 8B).

Thus, the prosecutors knew of the kidnaping and murder offenses for more than six months, and a month passed from the time the information in the murder case was filed before jeopardy attached in the theft case. Under such circumstances, the absence of the prosecutors from the murder case for a few days does not provide a

sufficient basis to excuse the People from meeting the mandatory joinder requirements of § 18–1–408(2) and Crim.P. 8(a).

Here, the theft case resulted from a grand jury indictment, and the murder and kidnaping case was brought by the district attorney through an information. The People, citing *U.S. v. Radetsky*, 535 F.2d 556 (10th Cir.1976), argue that it is impermissible to join an indictment and an information. For several reasons, we reject this argument.

First, the plain language of the compulsory joinder statute § 18–1–408(2) and the identical language of Crim.P. 8(a) state that *all offenses known to the district attorney* must be joined and prosecuted as separate counts in a single prosecution. Therefore, the statute and the rule encompass all offenses arising from the same criminal episode, whether they are brought through indictment or information.

Furthermore, Crim.P. 13 permits the court to join indictments, informations, complaints, or summons and complaints to be tried together "if the offenses ... could have been joined in a single indictment, information, complaint, or summons and complaint." Moreover, under § 18–1–408, amendments and consolidation are to be liberally allowed. *See Jeffrey v. District Court, supra.* Thus, the difference in the origin of the cases did not operate to prohibit their joinder.

Accordingly, we conclude the failure of the district attorney to have joined the murder and theft cases, as required under § 18–1–408(2), necessitates that the murder and kidnaping cases be dismissed with prejudice. *See People v. Riddick*, 626 P.2d 641 (Colo.1981).

## II.

Defendant next contends that the plea agreement should not have been declared void on the basis of his alleged noncompliance. We agree that the trial court applied the incorrect legal standard in determining whether defendant breached the plea agreement and, therefore, remand this is-

sue to the trial court for further determination.

A defendant has a constitutional right to be treated with fairness throughout the plea bargaining process. Thus, when a defendant has reasonably relied to his detriment on a government promise, enforcement of that promise in a manner which secures fundamental fairness to the defendant is guaranteed by the Fourteenth Amendment and Colo. Const. art. II, § 25. *People v. Fisher*, 657 P.2d 922 (Colo.1983).

Here, defendant waived his privilege against self-incrimination and submitted to several interviews which yielded significant information to the prosecution. He also waived his right to counsel and to a speedy trial. He testified against his father at his father's preliminary hearing. These actions by defendant were done in reliance upon the People's promises under the agreement.

The People argue that, because defendant gave inconsistent statements and was not completely forthcoming in the initial interviews, there was no binding agreement. That argument derives from contract law, and both trial courts which passed on whether defendant had complied with the agreement stated that they were relying on contract principles in deciding this issue. We conclude, however, that such reliance on principles of contract law must be rejected.

While an analogy to substantive and remedial contract law is sometimes useful in fashioning a remedy for an accused aggrieved by a governmental promise, the key concept underlying the analysis of how a plea agreement should be construed is the constitutional due process right of a defendant to be treated with fairness. *People v. Fisher, supra; Cooper v. United States*, 594 F.2d 12 (4th Cir.1979).

The proper resolution of disputed plea agreements depends primarily on constitutionally based, fundamental fairness concepts and cannot be determined in favor of the government on the fortuities of the words used in the agreement. *People v. Fisher, supra.* In other words, the standards of commerce cannot govern the administration of criminal justice. *People v. Reagan*, 395 Mich. 306, 235 N.W.2d 581 (1975).

Here, in resolving this plea agreement dispute, the trial court relied entirely on contract analysis and, in so doing, strictly construed the contract against defendant. The court, in effect, held that defendant's failure to meet totally every term of the contract rendered it void.

The first trial court further indicated, however, that defendant had substantially performed various parts of the agreement by making helpful statements, by testifying against his father, by passing a polygraph test, and by producing the bodies of several victims, including that of Bert Donoho.

Under these circumstances, particularly in light of defendant's waiver of important constitutional rights and his serious detrimental reliance on the agreement, *see People v. Jeffrey, supra; People v. Fisher, supra,* we determine that defendant need only have substantially performed his part of the bargain in order to obtain its benefits. *See People v. Fanger*, 748 P.2d 1332 (Colo.App.1987) (substantial compliance by defendant is sufficient).

We therefore remand the case to the trial court to determine whether defendant substantially performed the agreement.

### III.

### A.

The People next argue that the agreement was rendered void by the evidence that defendant was the person who killed Bert Donoho. Under the record before us, we are unable to rule on this issue and, therefore, also remand it to the trial court for further proceedings. However, the trial court need only resolve this issue if it first determines that defendant substantially complied with the plea agreement.

A determination on this issue will necessarily require an inquiry into the precise meaning of the language of the agree-

ment as it was understood by the defendant and defendant's legitimate expectations arising therefrom. *See People v. Macrander,* 756 P.2d 356 (Colo.1988). Also, since the agreement was drafted by the prosecution, any ambiguity as to its meaning and scope must resolved in favor of the defendant. *People v. Romero,* 745 P.2d 1003 (Colo.1987).

The agreement between the People and defendant stated it would be void if a judge or grand jury were to determine that probable cause existed to believe that defendant was the "perpetrator" or had "personally committed" the homicide of Bert Donoho. In our view, for the agreement to be invalidated under this provision, the People must present evidence to a judge or grand jury establishing probable cause that defendant was the one who used the device which killed Donoho.

When the district attorney's office entered into this agreement with defendant, it knew that he was involved in stealing Bert Donoho's truck and, in all likelihood, had been involved in Donoho's disappearance and perhaps death. Therefore, if the terms "perpetrator" or "personally committed the homicide" have meaning in this context, they must be construed to mean that defendant himself wielded the hammer or knife that caused Donoho's death.

Accordingly, we remand the issue of whether defendant personally killed Donoho for a probable cause determination. Moreover, such determination must be made by a judge or grand jury based on evidence other than defendant's statements or from statements by those persons he has accused of committing the murder, or from evidence obtained as a result of such statements.

We note that the homicide case was tried on the basis that defendant was either a complicitor or a principal and therefore the jury did not determine if defendant was the perpetrator of Donoho's murder.

The agreement between the prosecution and defendant also states that the fact and evidence of the recovery of the bodies of the homicide victims, including Bert Donoho, shall be admissible in any criminal prosecution against any person including the defendant. Accordingly, we conclude that all evidence of the recovery of Bert Donoho's body is admissible in any judicial proceeding to determine if probable cause exists that defendant personally killed Donoho.

If, given these evidentiary limitations, there is probable cause that defendant personally killed Donoho, the agreement is then void and the theft and drug convictions and sentences are affirmed. On the other hand, if probable cause is not so established, then the agreement stands and the judgment of conviction on the theft and drug charges stands reversed.

### B.

There remains the question of the appropriate remedy if the agreement is enforceable because defendant substantially complied with its terms and because defendant did not "personally commit" the homicide of Donoho.

The agreement sets a limit upon the term of incarceration defendant might serve as a result of convictions arising out of the indictment. However, there are no specifications in the agreement of how such convictions must be obtained. We assume that a plea of guilty to reduced charges was contemplated. However, a sentencing recommendation of the prosecutor cannot be binding on a court; it may refuse to follow such a recommendation. Section 16–7–302(3), C.R.S. (1986 Repl.Vol. 8A); Crim.P. 11(f)(5).

If the agreement is in effect, defendant must be allowed to enter a plea of guilty to a charge or charges for which he could be sentenced to a term of "actual incarceration of approximately two years." If defendant does so, then the People must recommend a sentence which would yield such a term of "actual incarceration." If such a sentence is imposed, all remaining charges shall be dismissed. However, if the trial court refuses to accept the plea agreement, defendant then has the right to withdraw his guilty plea and proceed with a new trial on the theft and drug charges.

 We reach this conclusion because, in our view, absent fulfillment of the agreement, it is only by returning the parties to the position they were in prior to the agreement that defendant's due process right to fair treatment can be accomplished. *See People v. Romero, supra.* Also, under the agreement, none of the evidence derived from defendant's statements and assistance can be used against him at retrial.

We further conclude that the terms of the agreement itself preclude the use of defendant's statements, either substantively or for impeachment purposes. In the event that defendant is retried because the agreement is declared void, defendant's interview statements cannot be admitted for any purpose. *See People v. Fanger, supra.*

### IV.

Defendant also contends that the drug case must be dismissed as his rights to speedy trial thereon were violated by its continuance beyond the speedy trial deadline. We disagree.

 Even over a defendant's objection, a trial delay because of the unavailability of material evidence which the prosecution has diligently sought does not violate defendant's speedy trial rights. Section 18–1–405(6)(g)(I), C.R.S. (1986 Repl. Vol. 8B). The trial court's ruling that the People acted diligently in attempting to secure the presence of the material witness finds some support in the record. It must, therefore, be upheld. *See People v. Goodpaster,* 742 P.2d 965 (Colo.App.1987).

 We also reject defendant's argument that the trial court abused its discretion in denying his motion for jury trial as to the drug conspiracy charge.

 The statutory right to a jury trial may be voluntarily and knowingly waived by a defendant. If it is waived, it is within the trial court's discretion to permit revocation of the waiver prior to commencement of trial. Section 18–1–406(3), C.R.S. (1986 Repl.Vol. 8B).

Here, defendant admits that his initial waiver of jury trial was made knowingly and voluntarily. However, he claims that because of a change in circumstances, specifically the granting of a continuance as to the drug case, the subsequent reassignment of that case to another judge, and the entry of a new private attorney in the action, the trial court abused its discretion in denying his motion.

A review of the record indicates that defendant was aware of the potential logistical problems involved with numerous out-of-state witnesses at the time he waived his jury trial right. Additionally, the trial court ruled that defendant's motion for jury trial was untimely because it was made on the day of trial for the drug charge. Accordingly, we conclude that there was no abuse of discretion by the trial court in denying defendant's motion.

The judgments of conviction for murder and kidnapping are reversed. As to the judgments of conviction concerning the theft and drug charges, the causes are remanded for a determination of whether defendant substantially performed the terms of the agreement or whether there is probable cause to believe that defendant personally killed Donoho.

If defendant breached the agreement or probable cause that defendant personally committed the offense is found to exist, then the plea agreement is void and the theft and drug judgments of conviction shall stand affirmed, except as to defendant's right to appeal that determination. If defendant did substantially comply with the agreement or if probable cause that defendant personally committed the offense is not shown, then the judgments of conviction on the theft and drug charges are reversed, and the cause is remanded for further proceedings consistent with this opinion.

PIERCE, J., concurs.

STERNBERG, C.J., dissents.

Chief Judge STERNBERG dissenting.

I respectfully dissent from the holding of the majority that the prosecution of the

murder charge was barred by failure to join it with the theft charge. I also disagree with the majority's holding that the trial courts erred in refusing to enforce the plea agreement. Thus, I would affirm the judgments of conviction as to all charges.

## I.

For the compulsory joinder provisions of § 18–1–408(2), C.R.S. (1987 Repl.Vol. 8B) to apply, five elements must be present: 1) the offenses in question must have been committed in the same judicial district; 2) there must be a prosecution against the offender; 3) the prosecution must have had knowledge of the several offenses at the time of commencement of prosecution; 4) the offenses must have arisen out of the same criminal episode; and 5) the offender must previously have been subjected to single prosecution. *People v. Patrick,* 773 P.2d 575 (Colo.1989).

Further, as first noted in *Jeffrey v. District Court,* 626 P.2d 631 (Colo.1981), and restated in *People v. Robinson,* 774 P.2d 884 (Colo.1989), the focus in assessing whether joinder was required must be on prosecutorial knowledge "at that stage of the initial prosecution at which jeopardy commences."

I disagree with the majority's view that the state of prosecutorial knowledge of the murder offense at the time jeopardy attached in the theft case was sufficient to require joinder.

It must be borne in mind that, beginning in 1983, the police authorities of several counties in this state and of other states were participating in a tremendously complex investigation concerning, among other things, the disappearance of one Bert Donoho.

In 1984, the police first began investigating the defendant, but this was with respect to the sale of a truck which Donoho had been driving when he disappeared. In the course of this investigation, there arose allegations that the defendant and others in his family, including his father, had been involved in several homicides, the hiding of the victims' bodies, and other illegal activities.

It was not until January 1986 that, based upon information supplied by the defendant, Donoho's body was found. As a result, defendant was thereafter accorded immunity under a written agreement that was to be void if evidence was developed that "the defendant personally committed the homicide of Bert Donoho or any other verifiable homicide."

Because of the chronology by which the prosecution of defendant developed, I cannot agree with the majority that the prosecutors' knowledge of the defendant's involvement in the homicide was such that, as a matter of law, joinder of that charge with the theft charge was required. In my view it would be appropriate, therefore, to remand the cause for findings on this question.

However, when the defendant moved in the murder case to dismiss because of the failure to join, the trial court found that, at the time jeopardy attached for the theft case, *i.e.,* the day of trial, there was no one who could join the charges because the district attorney's office had previously been disqualified and a new prosecutor had not yet been appointed. The record supports that finding.

Thus, I would uphold the trial court's denial of the motion to dismiss for failure to join or, alternatively, I would remand for findings on the issue of prosecutorial knowledge.

## II.

The issue of enforcement of the plea agreement has been twice litigated. The courts in both the theft and murder cases held hearings on motions to enforce the plea agreement. Both heard evidence on the question and denied the motion on the basis that the defendant did not meet his obligation of "truthfully, faithfully, and fully" providing "accurate" information on the death of Donoho and the other homicide victims.

I agree with this conclusion of the trial courts. And, because there is record sup-

port for those courts' findings of fact, they are binding on review.

*People v. Romero*, 745 P.2d 1003 (Colo. 1987) is the seminal Colorado authority on the issue of enforcement of plea agreements. There, our supreme court set forth the factors to be considered in determining the existence and extent of the right to enforce a plea agreement. Those factors include:

whether a promise was made to the defendant by a governmental official with apparent authority to bind the government, and, if such promise was made, the scope of the promise; *whether the defendant reasonably and detrimentally relied on the promise by performing his side of the bargain;* and, if the defendant reasonably and detrimentally relied on the promise, the appropriate remedy to which the defendant is entitled. (emphasis added)

Simply stated, in my view, the defendant here was not entitled to enforcement of this plea agreement because, as found by two trial courts on supporting evidence, he had not performed his side of the bargain. There is abundant support in the record for the trial courts' findings. Indeed, the defendant conceded that he had not provided information about everything because he would then "no longer be in control" of the situation.

The defendant changed his story on several significant points, including his brother's involvement in the crime. He offered differing descriptions of the crimes. He changed his story about whether he actually saw his father hit Donoho with a hammer, about how many blows were struck, and about whether his father slit Donoho's throat. In instances in which investigation took place attempting to corroborate certain of defendant's statements, he would change his story when corroboration of the earlier version was not forthcoming.

The agreement in this case required that defendant "truthfully, faithfully and fully" provide information. There was no middle ground allowing him to provide truthful information about some things but not about others. He had to comply with the agreement fully, or not at all. He did not do so; thus, the trial courts properly refused to enforce the agreement. *People v. Romero, supra.*

Finally, I note that, under the specific terms of the agreement, the evidence of the defendant's personal involvement in the slaying of Donoho would have served as a further basis for refusing to enforce it.

There being no other reversible error in the record of these trials, I would affirm the convictions.